UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TODD MATTOX,

        Plaintiff,               CIVIL ACTION NO. 08-13020

        v.                    DISTRICT JUDGE BERNARD A. FRIEDMAN

PATRICIA L. CARUSO, DENNIS      MAGISTRATE JUDGE VIRGINIA M. MORGAN
STRAUB, J. ARMSTRONG, JAN E
TROMBLEY, THOMAS BIRKET,
LLOYD W. RAPELJE, O.T. WINN,
SUSAN KOHLOFF, AMY S. BEST,
and ZUMMER,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

**I. Introduction**

    This is a *pro se* 42 U.S.C. § 1983 action in which the plaintiff, an inmate in the custody

of the Michigan Department of Corrections (MDOC), alleges that the defendants[1] deprived

plaintiff of his rights under the United States Constitution through their deliberate indifference to

plaintiff's serious medical needs.  The matter comes before the Court on defendants Caruso,

---

[1]According to plaintiff's complaint, the individual defendants are all employees or former employees of the MDOC:  MDOC Director Patricia Caruso; MDOC Deputy Director Dennis Straub; MDOC employee James Armstrong; former Warden at Saginaw Correctional Facility (SRF) Jan Trombley; former SRF Warden Thomas Birket; SRF Warden Lloyd Rapelje; SRF Deputy Warden O. T. Winn; SRF Assistant Deputy Warden Susan Kohloff; SRF Assistant Resident Unit Supervisor (ARUS) Amy Best; and SRF Resident Unit Manager (RUM) Zummer.

Straub, Armstrong, Rapelje, Winn, Kohloff, Best and Zummer's Motion for Summary Judgment (D/E #26) and defendant Birket's Motion for Summary Judgment (D/E #35).[2]  For the reasons discussed below, this Court recommends that defendants Caruso, Straub, Armstrong, Winn, Kohloff, and Zummer's Motion for Summary Judgment (D/E #26) be **GRANTED** and that all of those defendants be granted summary judgment.  With respect to Rapelje and Best, it is recommended that summary judgment be **GRANTED IN PART**.  This Court also recommends that defendant Birket's Motion for Summary Judgment be **GRANTED**.

This Court further recommends that defendant Trombley be dismissed *sua sponte*.  Defendant Trombley has not been served in this matter and is not a party to either motion for summary judgment.  However, the reasoning of this Report and Recommendation applies equally to her and she would be entitled to dismissal if she was ever served due to her lack of personal involvement in the alleged constitutional violations.  Where, as here, a plaintiff is proceeding *in forma pauperis*, the Court may dismiss a claim at any time if the Court determines that the plaintiff has failed to state a claim upon which relief can be granted.  28 U.S.C. § 1915(e)(2)(B)(ii).  Plaintiff has failed to state claim upon which relief can be granted against Trombley and, therefore, Trombley should be dismissed *sua sponte*.

Accordingly, it is recommended that the case continue against only defendants Rapelje and Best and only as to the claim that plaintiff was not permitted to open doors and windows.

---

[2]This Court would note that DE 35 is incorrectly identified on the docket sheet as being filed by all the defendants except Trombley.

## II. Background

### A. Complaint

On July 14, 2008, plaintiff filed the complaint against defendants in this matter (D/E #1). In that complaint, plaintiff alleges that plaintiff arrived at the Saginaw Correctional Facility in Saginaw, Michigan, on October 25, 2007 and that his medical detail provided that plaintiff required a non-smoking housing unit and a bottom bunk because of plaintiff's chronic asthma, bronchitis and gastroesophageal reflux disease (GERD). (Complaint, ¶¶ 17-18) According to plaintiff's complaint, while plaintiff's housing unit was designated as non-smoking, many inmates smoked cigarettes there. (Complaint, ¶¶ 18-19) Plaintiff also alleges that he complained to defendant Best, the Assistant Resident Unit Supervisor for plaintiff's housing unit, but she merely told plaintiff that the housing unit does a good job in regulating smoking. (Complaint, ¶¶ 21-22) Plaintiff further alleges that the constant smoking in his housing unit caused plaintiff's health to deteriorate and that his health problems were exacerbated by defendant Rapelje's policy, effective January 1, 2008, requiring all outside windows and doors to be closed from November 1st through March 15th. (Complaint, ¶¶ 23-27) According to plaintiff's complaint, he suffered two asthma attacks because of the constant smoking in the housing unit and his asthma medication had to be increased. (Complaint, ¶¶ 27-29) Plaintiff also alleges that, after complaining to everyone he could complain to, he filed a grievance over the smoking in the housing unit and his grievance was denied, without a proper investigation by defendant Zummer at Step I, defendant Rapelje at Step II, and defendants Caruso and Armstrong at Step III. (Complaint, ¶¶ 30-34)

-3-

In the "Claims for Relief" section of his complaint, plaintiff alleges that defendants Best and Rapelje's failure to move plaintiff to a smoke-free housing unit, as well as defendant Rapelje's order to keep all windows and doors closed, constituted cruel and usual punishment and deliberate indifference to plaintiff's serious medical needs.  (Complaint, ¶ 35)  Plaintiff also alleges that defendants Caruso and Armstrong's failure to properly resolve plaintiff's grievance or supervise their employees constituted cruel and usual punishment and deliberate indifference to plaintiff's serious medical needs.  (Complaint, ¶ 36)  Plaintiff further alleges that defendants Straub, Trombley, Birket, Winn, Kohloff, and Zummer all held supervisory positions within the MDOC and their failure to move plaintiff to another housing unit, despite their awareness of plaintiff's complaint, constituted cruel and usual punishment and deliberate indifference to plaintiff's serious medical needs.  (Complaint, ¶ 37).

As relief, plaintiff seeks a declaratory judgment, compensatory damages, punitive damages and any other appropriate relief.

### B.  Pending Motions for Summary Judgment

### 1. D/E #26

On September 26, 2008, defendants Caruso, Straub, Armstrong, Rapelje, Winn, Kohloff, Best and Zummer filed a motion for Summary Judgment (D/E #26).  In that motion, defendants argue that plaintiff failed to exhaust administrative remedies prior to filing suit against defendants Armstrong, Winn, and Zummer.  Plaintiff also argues that defendants Caruso, Straub, Rapelje, Armstrong, Zummer and Winn are entitled to summary judgment because they were not personally involved in the facts giving rise to the complaint.  Defendants further argue that

-4-

plaintiff has failed to establish the subjective component of an Eighth Amendment claim because he cannot show that defendants were deliberately indifferent to his medical needs and that, even if plaintiff stated an Eighth Amendment claim, defendants are entitled to qualified immunity because their conduct was not objectively unreasonable in light of the clearly established law.

On October 17, 2008, plaintiff filed a response to that motion for summary judgment (D/E #32). In that response, plaintiff argues that defendants Armstrong, Winn and Zummer are not entitled to summary judgment on the basis that plaintiff failed to exhaust his administrative remedies because Winn was mentioned in the grievance plaintiff filed, Armstrong and Zummer processed plaintiff's grievance, and all three were part of the subject matter of the grievance. Plaintiff also argues that defendants Caruso, Straub, Rapelje, Armstrong, Zummer and Winn are all liable for failing to correct the unconstitutional actions of their subordinate staff. Plaintiff further argues that he has demonstrated that the defendants were deliberately indifferent to plaintiff's medical needs. Plaintiff also argues that defendants are not entitled to qualified immunity because their actions violated clearly established constitutional rights.

On October 24, 2008, defendants Caruso, Straub, Armstrong, Rapelje, Winn, Kohloff, Best and Zummer filed a reply to plaintiff's response in which they reiterated their earlier arguments (D/E #33).

On December 8, 2008, plaintiff filed a motion to amend his response to defendants' motion for summary judgment (D/E #38) and this Court later granted plaintiff's motion. In that amended response, plaintiff makes the same arguments in that amended response that he made his earlier response.

**2. D/E #35**

On November 17, 2008, defendant Birket filed a motion for summary judgment (D/E #35).  In that motion, Birket argues that he is entitled to summary judgment because there is no liability for respondeat superior under 42 USC §1983 and because plaintiff cannot demonstrate that Birket was deliberately indifferent to his serious medical needs.  Birket also argues that he is entitled to qualified immunity because plaintiff was provided with tobacco-free housing and prison officials enforced smoking violations by issuing misconduct tickets.

On December 12, 2008, plaintiff filed a response to Birket's motion for summary judgment (D/E #39).  In that response, plaintiff argued that Birket is liable for failing to correct the unconstitutional actions of his subordinate staff because such a failure constituted deliberate indifference to plaintiff's serious medical needs.

On December 18, 2008, Birket filed a reply to plaintiff's response (D/E #40) in which he again argued that he had no personal involvement with the alleged constitutional violations and that plaintiff has failed to demonstrate that a genuine issue of material fact exists with respect to his deliberate indifference claim.

### III.  Standard of Review

Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56(b), which states that "[a] party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move without or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof."  Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and

-6-

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-movant. See Matsushita Electric Industrial Co., Ltd. et al. v. Zenith Radio Corp., et. al., 475 U.S. 547, 587, 106 S.Ct. 1348, 1356 (1986); see also B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 591-92 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Once the moving party has carried his burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 587, 106 S.Ct. 1348. The opposing party cannot merely rest upon the allegations contained in his pleadings. Rather, he must submit evidence demonstrating that material issues of fact exist. Banks v. Wolfe County Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003); Fed. R. Civ. P. 56(e). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S.Ct. 1348 (quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 1575, 1592 (1968)).

## IV. Discussion

### A. Personal Involvement

To succeed in under § 1983 , a plaintiff must show personal involvement by the defendant in the constitutional violation. Copeland v. Machulis, 57 F.3d 476, 481 (6th Cir.

-7-

1995) (per curiam).  A respondeat superior theory of liability, based on the right to control employees, is not cognizable under 42 U.S.C. § 1983.  See Turner v. City of Taylor,  412 F.3d 629, 649 (6th Cir. 2005); Hays v. Jefferson County, Ky., 668 F.2d 869, 874 (6th Cir. 1982). "Thus, a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it.  At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."  Shehee v. Luttrell,  199 F.3d 295, 300 (6th Cir. 1999) (citations omitted). Moreover, the Sixth Circuit held in Shehee that a denial of an administrative grievance and the failure to remedy the alleged constitutional violation did not constitute sufficient involvement to establish liability under 42 U.S.C. § 1983.  Shehee, 199 F.3d at 300.

In this case, plaintiff has failed to allege or provide any evidence suggesting that defendants Caruso, Armstrong, Straub, Trombley, Birket, Winn, Kohloffand or Zummer were personally involved in any of the alleged constitutional violations and those defendants are entitled to summary judgment.  Plaintiff alleges that defendants Caruso and Armstrong's failure to properly resolve plaintiff's grievance or supervise their employees constituted cruel and usual punishment and deliberate indifference to plaintiff's serious medical needs (Complaint, § 36), and that defendants Straub, Trombley, Birket, Winn, Kohloffand and Zummer all held supervisory positions within the MDOC and their failure to move plaintiff to another housing unit, despite their awareness of plaintiff's complaint, constituted cruel and usual punishment and deliberate indifference to plaintiff's serious medical needs (Complaint, ¶ 37).  However, as

-8-

discussed above, a respondeat superior theory of liability or a theory of liability based on the denial of an administrative grievance or the failure to remedy the alleged constitutional violation is not cognizable under 42 U.S.C. § 1983, and a plaintiff must show, at the minimum, that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.  Turner, 412 F.3d at 649; Shehee,  199 F.3d at 300.  Plaintiff relies solely on such improper theories of liability in his claims against defendants Caruso, Armstrong, Straub, Trombley, Birket, Winn, Kohloff, and or Zummer and no genuine issue of material fact exists regarding whether those defendants were personally involved in the alleged constitutional violations.  Consequently, defendants Caruso, Armstrong, Straub, Trombley, Birket, Winn, Kohloff, and Zummer are entitled to judgment as a matter of law and should be granted summary judgment.

Defendant Rapelje also argues that he is entitled to summary judgment due to a lack of personal involvement because plaintiff alleges that Rapelje responded to and rejected a grievance filed by plaintiff.  Plaintiff does alleges that his grievance was denied, without a proper investigation by defendant Rapelje at Step II, but it does not appear that plaintiff also alleges that Rapelje's grievance response constituted cruel and usual punishment and deliberate indifference to plaintiff's serious medical needs.  (Complaint, ¶¶ 30-36)[3]  To the extent plaintiff makes that claim, Rapelje is entitled to summary judgment on it because a denial of an administrative grievance and the failure to remedy the alleged constitutional violation did not constitute

---

[3]Plaintiff does allege that defendants Caruso and Armstrong's failure to properly resolve plaintiff's grievance constituted cruel and usual punishment and deliberate indifference to plaintiff's serious medical needs.  (Complaint, ¶ 36)

sufficient involvement to establish liability under 42 U.S.C. § 1983.  Shehee, 199 F.3d at 300.

However, plaintiff also alleges that Rapelje's order to keep all windows and doors closed,

constituted cruel and usual punishment and deliberate indifference to plaintiff's serious medical

needs.  (Complaint, ¶ 35)  That claim clearly alleges personal involvement by Rapelje, but

Rapelje never addresses it in the motion for summary judgment.  Therefore, Rapelje is only

entitled to partial summary judgment due to a lack of personal involvement in the alleged

constitutional violations.

### B.  Exhaustion of Administration Remedies

Pursuant to the Prison Litigation Reform Act of 1995 (PLRA), 110 Stat. 1321-71, as

amended 42 U.S.C. §§ 1997e *et seq.*, "[n]o action shall be brought with respect to prison

conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in

any jail, prison, or other correctional facility until such administrative remedies as are available

are exhausted."  42 U.S.C. § 1997e(a).  Accordingly, exhaustion of available administrative

remedies is mandatory in order for prisoners to bring a claim in federal court.  Jones v. Bock, __

U.S. __, __, 127 S.Ct. 910, 914, 166 L.Ed.2d 798 (2007); Woodford v. Ngo, __ U.S. __, __, 126

S.Ct. 2378, 2383, 165 L.Ed.2d 368 (2006).  Not only must the prisoner exhaust all available

remedies but such exhaustion must be proper, including "compliance with an agency's deadlines

and other critical procedural rules."  Woodford, 126 S.Ct. at 2386 (holding that an inmate's

exhaustion must be in compliance with applicable grievance procedures, specifically deadlines,

because "no adjudicative system can function effectively without imposing some orderly

structure on the course of its proceedings").  However, § 1997e does not impose a jurisdictional

bar to federal jurisdiction, Curry v. Scott, 249 F.3d 493, 501 -503 (6th Cir. 2001), and while the preferred practice is for inmates to complete the grievance process prior to the filing of an action, "because the exhaustion requirement is not jurisdictional, district courts have some discretion in determining compliance with the statute."  Wyatt v. Leonard, 193 F.3d 876, 879 (6th Cir. 1999).

In this case, plaintiff filed a grievance regarding his claims that he was not being housed in a smoke-free environment that could accommodate his medical needs.  (Grievance SRF-08-02-128-03c; attached as Exhibit B to D/E #26).  Plaintiff also stated in that grievance that "[t]his grievance is properly filed in compliance with USCA title 42 §1997e(a); [PLRA], and Jones vs. Bock, #05-7058 (U.S. Supreme Court) for the purpose of Federal Exhaustion" and that it was being filed against defendants Straub, Caruso, Trombley, Birket, Best, Rapelje and Kohloff, as well as MDOC Region #1 Administrator James McKeenen.[4]

Defendants Armstrong, Winn and Zummer were not named in that grievance and they argue they are entitled to summary judgment on the basis that plaintiff failed to exhaust his administrative remedies against them prior to filing the lawsuit.  While, as discussed above, those defendants are entitled to summary judgment due to lack of personal involvement, they should not be granted summary judgment on the basis that plaintiff failed to exhaust his administrative remedies.  Plaintiff did fail to specifically identify Armstrong, Winn and Zummer in the grievance and MDOC Policy Directive 03.02.130 does state that the names of all those involved in the issue being grieved are to be included in the grievance (PD 03.02.130, ¶ T; attached as Exhibit C to D/E #26).  However, despite the fact that plaintiff failed to name those

---

[4]McKeenen is not a defendant in this case.

-11-

three defendants in the Step I grievance, he should still be deemed to have properly exhausted his administrative remedies.  "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  Jones, 127 S.Ct. at 923.  As evidenced by the fact that plaintiff's grievance regarding his claims in this case were decided on the merits at all three separate steps of the MDOC grievance process, MDOC itself was satisfied that plaintiff properly filed his grievance.[5]  To the extent Armstrong, Winn and Zummer argue that the grievance procedure failed to provide them with notice of plaintiff's claim, the Sixth Circuit has noted that, while the grievance procedure may promote early notice to those who might later be sued, that has not been thought to be one of the leading purposes of the exhaustion requirement.  Jones, 127 S.Ct. at 923, citing Johnson v. Johnson, 385 F.3d 503, 522 (5th Cir. 2006) ("We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation").  The Sixth Circuit has identified the benefits of exhaustion to include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record."  Jones, 127 S.Ct. at 923.  Those goals have been met in this case and, therefore, plaintiff should be deemed to have exhausted his administrative remedies against Armstrong, Winn and Zummer prior to filing suit.

_____

[5]Grievance SRF-08-02-128-03c; attached as Exhibit B to D/E #26.

**C. Qualified Immunity**

Defendants also argue that they are entitled to qualified immunity with respect to plaintiff's claim that they were deliberately indifferent to his serious medical needs. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Saucier v. Katz, 533 U.S. 194, 200; 121 S.Ct. 2151; 150 L.Ed.2d 272 (2001) *overruled in part by* Pearson v. Callahan, --- U.S. ----, 129 S.Ct. 808, --- L.Ed.2d ---- (2009), (quoting Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). The privilege is an immunity from suit and not a mere defense to liability. Saucier, 533 U.S. at 200. As a result, courts have "repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam).

"A court should not grant summary judgment on the issue of qualified immunity if there exists a genuine issue of material fact, 'involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights.'" Flint ex rel. Flint v. Kentucky Dept. of Corrections, 270 F.3d 340, 346-347 (6th Cir. 2001) quoting Poe v. Haydon, 853 F.2d 418, 425-426 (6th Cir. 1988). A court required to rule upon the qualified immunity issue must consider whether the facts alleged show the officer's conduct violated a constitutional right and whether that constitutional right was clearly established. Saucier, 533 U.S. at 201. In making those inquiries, courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."

-13-

Pearson, 129 S.Ct. at 818. "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition; and it too serves to advance understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable." Saucier, 533 U.S. at 201.

### 1. Constitutional Violation

Here, defendants first argue that there was no constitutional violation. As discussed above, in the "Claims for Relief" section of his complaint, plaintiff alleges that defendants Best and Rapelje's failure to move plaintiff to a smoke-free housing unit, as well as defendant Rapelje's order to keep all windows and doors closed, constituted cruel and usual punishment and deliberate indifference to plaintiff's serious medical needs. (Complaint, § 35)

Elementary principles concerning the Eighth Amendment's proscription of cruel and unusual punishment establish the government's obligation to provide medical care for those whom it is punishing by incarceration. Estelle v. Gamble, 429 U.S. 97, 102-103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). A prisoner's claim that his constitutional right to medical treatment was violated is analyzed under the Eighth Amendment. See Estelle, 429 U.S. at 103-104. To state a § 1983 claim for a violation of a prisoner's Eighth Amendment rights due to inadequate medical care, the prisoner must allege facts evidencing a deliberate indifference to serious medical needs. Wilson v. Seiter, 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).

To succeed on a claim of deliberate indifference, plaintiff must satisfy two elements, an objective one and a subjective one. Wilson, 501 U.S. at 300. The objective element is satisfied by a showing that plaintiff had a serious medical need. Wilson, 501 U.S. at 297. "'Where the

seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person,' this obviousness is itself sufficient to satisfy the objective component of the adequate medical care test." Johnson v. Karnes, 398 F.3d 868, 874 (6th Cir. 2005), quoting Blackmore v. Kalamazoo County, 390 F.3d 890, 899 (6th Cir. 2004).  However if the need involves minor needs or non-obvious complaints of a serious need for medical care, the plaintiff "'must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment.'"  Johnson, 398 F.3d at 874, quoting Napier v. Madison County, Kentucky, 238 F.3d 739, 742 (6th Cir. 2001).  To satisfy the subjective component of the adequate medical care test, the plaintiff must demonstrate that the defendant "subjectively perceived a risk of harm and then disregarded it."  Comstock v. McCrary, 273 F.3d 693, 703 (6th Cir. 2001).

Deliberate indifference is characterized by obduracy and wantonness, not inadvertence or good faith error.  Gibson v. Foltz, 963 F.2d 851, 853 (6th Cir. 1992).  Moreover, where the prisoner has received some medical attention and the dispute is over the adequacy of the treatment, courts are reluctant to second guess medical judgments, Westlake v. Lucas, 537 F.2d 857, 860 n. 5 (6th Cir. 1976), and deliberate indifference does not include negligence in diagnosing a medical condition.  Sanderfer v. Nichols, 62 F.3d 151, 154 (6th Cir. 1995) (citations omitted).  However, it is not necessary for a plaintiff to "show that the official acted 'for the very purpose of causing harm or with knowledge that harm will result.'"  Comstock, 273 F.3d at 703, quoting Farmer, 511 U.S. at 835.  Put simply, "deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk."  Comstock, 273 F.3d at 703, quoting Farmer, 511 U.S. at 835.

-15-

**a. Objective Component**

Defendants argue that the law does not require that plaintiff be completely free from exposure to ETS and that plaintiff must show that he is being exposed to unreasonably high levels of ETS in order to satisfy the objective component of a deliberate indifference claim. In support of their argument, defendants cite to Helling v. McKinney, 509 U.S. 25, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993). In Helling, the plaintiff William McKinney alleged that he was incarcerated in a Nevada prison with a cell mate who smoked five packs a day and the Supreme Court found that a prisoner stated a claim under the Eighth Amendment by alleging that prison officials were deliberately indifferent by exposing him to ETS that posed "an unreasonable risk of serious damage to his future health." Helling, 509 U.S. at 35. With respect to the objective component of the plaintiff's claim, the Supreme Court stated that on remand the plaintiff was required to "show that he himself is being exposed to unreasonably high levels of ETS." Helling, 509 U.S. at 35. The Supreme Court further explained:

> Also with respect to the objective factor, determining whether McKinney's conditions of confinement violate the Eighth Amendment requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to ETS. It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate. [Helling, 509 U.S. at 35-36.]

However, defendants' argument that, pursuant to Helling, plaintiff must show that he was exposed to unreasonably high levels of ETS in order to satisfy the objective component of his

-16-

claim misconstrues the basis of plaintiff's claim.  Unlike the plaintiff in <u>Helling</u>, plaintiff does

not argue that exposure him to ETS poses an unreasonable risk of serious damage to his *future*

health.  Rather, plaintiff alleges that (1) he suffers from chronic asthma, bronchitis and

gastroesophageal reflux disease, (2) that his medical detail provides that plaintiff required a non-

smoking housing unit and a bottom bunk, and (3) that defendants failure to ensure that the

medical detail was followed cause plaintiff's health to worsen and constituted a deliberate

indifference to plaintiff's serious medical needs.  Given those allegations, plaintiff is clearly not

alleging danger to his future health and defendants' argument they are entitled to summary

judgment because of a lack of scientific or statistical evidence demonstrating that plaintiff has

been exposed to unreasonably high levels of ETS is without merit.

 The Sixth Circuit has addressed the type of case presented here, where the plaintiff

alleges that exposure to smoke is causing *current* medical problems.  In <u>Talal v. White</u>, 403 F.3d

423 (6th Cir. 2005), the plaintiff was allergic to tobacco smoke and, while he was confined in the

no-smoking housing unit at the Turney Center Industrial Prison; he was "subjected to excessive

levels of smoke at the hands of both staff and other inmates" in a facility that had a ventilation

system that would merely re-circulate smoky air.  In addition, the staff permitted smoking in the

non-smoking areas.  In that case, the Sixth Circuit explained:

> To satisfy the objective component, a prisoner must show that his
> medical needs are "sufficiently serious."  <u>Hunt v. Reynolds</u>, 974
> F.2d 734, 735 (6th Cir. 1992).  The exposure to smoke must cause
> more than "mere discomfort or inconvenience." <u>Id.</u> at 735.
> Additionally, the prisoner must demonstrate that the risk is one
> which society deems "so grave that it violates contemporary
> standards of decency to expose anyone unwillingly to such a risk."

-17-

> Helling, 509 U.S. at 36.  To satisfy the subjective component, a
> prisoner must show that prison authorities knew of, and manifested
> deliberate indifference to, his serious medical needs.  Id., at 32.
> [Talal, 403 F.3d at 426.]

In Talal, the Sixth Circuit ruled that the plaintiff met the objective test by demonstrating that his

illness was sufficiently serious:

> Here, Talal alleges that he has been subjected to excessive levels
> of smoke at the hands of both staff and other inmates and that
> TCIP's ventilation system merely re-circulates smoke-filled air.
> Additionally, he has substantiated that he suffers from ETS allergy.
> The record contains medical documentation evidencing this fact
> and establishing that smoke causes Talal sinus problems and
> dizziness.  On several occasions, medical staff recommended that
> Talal have a non-smoking cell partner.  On at least one occasion,
> medical staff recommended that he be placed in a non-smoking
> unit.  Based upon these facts, we conclude that Talal has alleged
> that he has a medical condition which is sufficiently serious to
> satisfy the objective component of the Helling test. [Talal, 403
> F.3d at 427.]

In this case, plaintiff submitted evidence demonstrating that he was transferred to SRF

due to medical reasons and that a Special Accommodation Medical Detail provided that plaintiff

was to be housed in a non-smoking housing unit because of plaintiff's asthma.  (Medical

Transfer and Special Accommodation Notice, attached as part of Exhibit A to Plaintiff's

Response to D/E #26)  Plaintiff also submitted medical records demonstrating that he suffered an

asthma attack on January 5, 2008 before being transferred to the Covenant Care Emergency Care

Center and being diagnosed with Bronchitis Asthmatic, and that plaintiff suffered another asthma

attack on January 28, 2008.  (Medical Records, attached as part of Exhibit A to Plaintiff's

Response to D/E #26)   Viewing that evidence and drawing all reasonable inferences in favor of

plaintiff, as the Court must, plaintiff has come forward with specific facts showing that there is a genuine issue for trial with respect to whether plaintiff had a serious medical need that satisfies the objective component of his deliberate indifference claim. <u>Matsushita</u>, 475 U.S. at 587.[6]

**b. Subjective Component**

The Sixth Circuit also found in <u>Talal</u> that the plaintiff met the subjective component by showing that the prison officials were aware of his condition but continued to violate the no-smoking policy in the smoke-free hosing unit. <u>Talal</u>, 403 F.3d at 427-428. In doing so, the Sixth Circuit distinguished the case from <u>Scott v. Dist. of Columbia</u>, 139 F.3d 940 (D.C. Cir. 1998), where "prison officials made good-faith efforts to enforce the prison's no-smoking policy." <u>Talal</u>, 403 F.3d at 428. The Sixth Circuit also concluded that "the mere existence of non-smoking pods does not insulate a penal institution from Eighth Amendment liability where, as [in <u>Talal</u>], a prisoner alleges and demonstrates deliberate indifference to his current medical needs and future health." <u>Talal</u>, 403 F.3d at 428. <u>See</u> <u>also</u> <u>Alvarado v. Litscher</u>, 267 F.3d 648 (7th Cir. 2001) (an Eighth Amendment claim arises when officials deliberately fail to enforce rules regulating smoking); <u>Warren v. Keane</u>, 196 F.3d 330 (2d Cir. 1999) (under-enforcement of inadequate smoking rules, overcrowding, and poor ventilation resulting in a prison environment permeated with smoke amounts to a violation of the Eighth Amendment).

---

[6]This Court would also note that, in <u>Hunt v. Reynolds</u>, 974 F.2d 734, 736 (6th Cir. 1992), the Sixth Circuit held "that the Eighth Amendment's objective component is violated by forcing a prisoner with a serious medical need for a smoke-free environment to share his cell with an inmate who smokes." Plaintiff has submitted an affidavit from his cellmate Donald Rhodus in which Rhodus asserts that Rhodus smokes. (Affidavit of Donald Rhodus, attached as Exhibit B to Plaintiff's Response to #26).

Here, defendants note the existence of the MDOC's non-smoking policy, arguing that the prison officials' alleged good faith efforts to enforce the policy prevent plaintiff from proving the subjective component of a claim of deliberate indifference.  The Supreme Court has held that the adoption of a nonsmoking policy will "bear heavily on the inquiry into deliberate indifference." Helling, 509 U.S. at 36 (noting that the realities of prison administration would appropriately be considered in evaluating this factor).  However, the Sixth Circuit has also concluded that "the mere existence of non-smoking pods does not insulate a penal institution from Eighth Amendment liability where, as [in Talal], a prisoner alleges and demonstrates deliberate indifference to his current medical needs and future health."  Talal, 403 F.3d at 428.  Moreover, in the context of defendants' specific knowledge of plaintiff's medical conditions, a policy alone may not be enough.  See Reilly v. Grayson, 157 F.Supp.2d 762, 771 (E.D. Mich. 2001) (stating "whereas a generalized risk of future harm may reasonably and perhaps only be addressed by implementation of an antismoking policy, existing serious medical needs are susceptible to and may reasonably require more specific action" and "[a] prison official presented with a doctor's note indisputably diagnosing an inmate with a heart condition and recommending that he be provided with a nonsmoking cellmate could not reasonably ignore the recommendation in reliance on an anti-smoking policy." ); Fisher v. Caruso, No. 03-71804, 2006 WL 2711807, *12 (E.D. Mich. September 21, 2006) (Cleland, J.) (denying summary judgment on the basis of a non-smoking policy where a reasonable fact finder could conclude that housing plaintiff in a facility where the non-smoking policy is consistently and strictly enforced would be the sole efficacious means to prevent a further serious risk of harm to plaintiff).

-20-

Defendants also cite to an unpublished Sixth Circuit case, Green v. Martin, 18 F. App'x 298, 300 (6th Cir.2001) (quoting Scott v. District of Columbia, 139 F.3d 940, 944 (D.C. Cir. 1998)), for the proposition that "[i]mperfect enforcement of [a non-smoking] policy by defendants does not equate to deliberate indifference on their part." (D/E #26 at 15)  The Sixth Circuit has quoted Scott in a series of unpublished cases subsequent to Green.  See, *e.g.*, Wilson v. Hofbauer, 113 F. App'x 651, 653 (6th Cir. 2004); Taylor v. Boot, 58 F. App'x 125, 127 (6th Cir. 2003); Henderson v. Martin, 73 Fed.App'x. 115, 118-119 (6th Cir. 2003).

However, this case is distinguishable from Scott, where the D.C. Circuit cited a number of steps taken by the defendant prison officials to demonstrate that the non-smoking policy was adhered to.  The Scott court stated:

> Here prison officials testified to their good-faith attempts to enforce the prison's nonsmoking policy to the best of their abilities. A fire protection specialist found the prison in substantial compliance with nonsmoking rules during unannounced inspections. Guards and prisoners caught ignoring or violating the nonsmoking policy were disciplined.  Steps were taken to improve ventilation in problem areas about which the prisoners complained. Grievances and requests from inmates and prison physicians regarding exposure to tobacco smoke were answered and acted upon. And again, actual measurements of the amount of smoke in the prison revealed that prison officials were doing a good job keeping the environment reasonably smoke-free. [Scott, 139 F.3d at 944.]

In this case, a reasonable fact finder could conclude that defendants failed to take steps comparable to those reported in Scott, aside from disciplining violators of the nonsmoking policy in some cases, and a genuine issue of material fact exists with respect to whether defendants were deliberately indifferent to plaintiff's serious medical needs.  Unlike the circumstances of

Scott, there is no evidence in the record of this case suggesting that defendants performed unannounced inspections, that they properly responded to complaints or grievances regarding smoking, or that actual measurements of the amount of smoke in the prison revealed that prison officials were doing a good job keeping the environment reasonably smoke-free.  Defendants did submit an affidavit from defendant Best asserting that the non-smoking policy is being enforced and over thirty misconduct tickets written from June 2, 2008 to August 20, 2008.  (Affidavit of Amy Best, ¶¶ 5-6, unsigned copy attached as Exhibit G to D/E #26, signed copy entered as D/E #27; Misconduct Reports, attached as part of Exhibit G to D/E #26)[7]  However, "[w]hile the records of violations support a conclusion that MDOC officials were working to enforce the non-smoking policy, a reasonable fact finder could also interpret the evidence as supporting Plaintiff's allegations of widespread smoking in many of the facilities housing Plaintiff since this litigation commenced."  Fisher v. Caruso, No. 03-71804, 2006 WL 2711807, *11-12  (E.D. Mich. September 21, 2006) (Cleland, J.).  Therefore, viewing the evidence and drawing all reasonable inferences in favor of plaintiff, as the Court must, the record taken as whole could lead a rational trier of fact to find for plaintiff, there is a genuine issue for trial, and defendants are not entitled to summary judgment with respect to the subjective component of plaintiff's deliberate indifference claim.

## 2. Clearly Established Right

--------

[7]Those misconduct tickets were issued after plaintiff filed his complaint, but, according to Best's affidavit, smoking misconduct reports are not kept past sixty days.  (Affidavit of Amy Best, ¶ 4; unsigned copy attached as Exhibit G to D/E #26, signed copy entered as D/E #27)

Defendants also argue that, even if there was a constitutional violation, the relevant constitutional right was not clearly established.  "When considering a claim of qualified immunity, '[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" King v. Ambs, 519 F.3d 607, 612 (6th Cir. 2008) (quoting Saucier, 533 U.S. at 202, 121 S.Ct. 2151.).  Moreover, as discussed above, "[t]his inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition; and it too serves to advance understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable." Saucier, 533 U.S. at 201.

Here, defendants argue that, once medical staff proscribed tobacco-free housing for plaintiff, prison staff transferred him to a tobacco free housing unit upon his arrival at SRF and defendants subsequently took strides to ensure that the tobacco-free unit remained smoke free by enforcing MDOC policy.  However, as discussed above, a genuine issue of material fact exists with respect to whether defendants' efforts were sufficient in light of Helling v. McKinney, 509 U.S. 25, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993) and Talal v. White, 403 F.3d 423 (6th Cir. 2005), and defendants do not dispute that the meaning of those cases, and the duties they impose, are clear.

## V. Conclusion

For the reasons discussed above, the Court recommends that defendants motion for summary judgment (D/E 26) be **GRANTED** as to Caruso, Straub, Armstrong, Winn, Kohloff, and Zummer and that all of those defendants be granted summary judgment.  With respect to Rapelje and Best, it is recommended that the motion be **GRANTED IN PART**.  This Court also recommends that defendant Birket's Motion for Summary Judgment be **GRANTED**.  This Court further recommends that defendant Trombley be **DISMISSED** *sua sponte* due to a clear lack of personal involvement in the alleged constitutional violations.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length

unless, by motion and order, the page limit is extended by the court.  The response shall address

each issue contained within the objections specifically and in the same order raised.


s/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge


Dated: March 12, 2009

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and plaintiff via
the Court's ECF System and/or U. S. Mail on March 12, 2009.

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan