UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TODD MATTOX,

    Plaintiff,

vs.

PATRICIA L. CARUSO, et al.,

    Defendants.
_____/

Civil Action No.
08-CV-13020

HON. BERNARD A. FRIEDMAN

**OPINION AND ORDER ACCEPTING IN PART AND REJECTING IN PART**
**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

    This matter is presently before the court on two defense motions for summary judgment [docket entries 26, 35]. Magistrate Judge Virginia Morgan has submitted a Report and Recommendation ("R&R") in which she recommends that the court grant summary judgment for defendants Caruso, Straub, Armstrong, Trombley, Birkett, Winn, Kohloff and Zummer, but that the court permit the case to proceed as to defendants Rapelje and Best.

    Defendants Rapelje and Best have filed objections to the R&R [docket entry 46] and plaintiff has responded to those objections [docket entry 49]. Plaintiff has also filed objections to the R&R [docket entry 47], to which defendants have not responded. The court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3).

    Plaintiff is an inmate at the Saginaw Correctional Facility ("SRF") who alleges that defendants, all of whom are employed by the Michigan Department of Corrections ("MDOC"), have violated his Eighth Amendment rights under *Estelle v. Gamble*, 429 U.S. 97 (1976), by assigning

him to a cell where he was subjected to secondhand smoke and/or by failing to reassign him to a smoke-free cell.[1]  Because plaintiff has asthma, he has received a "special accommodation order" by a prison physician requiring that he be housed in a non-smoking unit.  Plaintiff alleges that, despite this order, he was assigned to a cell with an inmate who smokes and that many other inmates in his unit smoke indoors as well.  Although plaintiff's housing unit is officially designated as non-smoking, plaintiff alleges that the policy is not adequately enforced and that, in fact, inmates commonly smoke in the lavatory, cells, and day rooms of this unit, and that his cell mate smokes in the cell.  Plaintiff further alleges that his grievance on this subject was denied at all levels on the grounds that (1) his medical need was being accommodated by his having been assigned to a "tobacco-free environment," and (2) the anti-smoking rules were being enforced.  Plaintiff alleges his exposure to secondhand smoke was intensified by an order issued by the prison warden, defendant Rapelje, requiring the windows and outer doors of the housing units to be closed from November 1 through March 15 to conserve energy.  As a result of being exposed to secondhand smoke, plaintiff alleges that his health has deteriorated and that he has suffered two asthma attacks, one of which required that he be taken by ambulance to a hospital emergency room for treatment.

        Defendants have moved for summary judgment on the grounds that (1) plaintiff did not exhaust his administrative remedies as to Armstrong, Winn and Zummer; (2) Caruso, Straub, Rapelje, Armstrong, Zummer, Winn and Birkett were not personally involved in the alleged

---

[1] The complaint names the following ten defendants: Patricia Caruso, Director of the MDOC; Dennis Straub, Deputy Director of the MDOC; J. Armstrong, designated by Caruso to respond to prisoner grievances at Step III; Jan Trombley, the SRF Warden "at the initial stages of this action"; Thomas Birkett, Acting Warden of SRF following Trombley's retirement; Lloyd Rapelje, Warden of SRF; O.T. Winn, Deputy Warden of SRF; Susan Kohloff, Assistant Deputy Warden of Housing at SRF; Amy Best, the Assistant Resident Unit Supervisor of plaintiff's housing unit; and Zummer, a Resident Unit Manager at SRF. Compl. ¶¶ 7-16.

constitutional violation; (3) plaintiff has established neither the objective nor the subjective components of an *Estelle* claim; and (4) defendants are entitled to qualified immunity. The magistrate judge recommends that the court (1) reject defendants' exhaustion argument; (2) grant summary judgment for defendants Caruso, Armstrong, Straub, Trombley,[2] Birkett, Winn, Kohloff and Zummer on the grounds they were not personally involved in the alleged violation of plaintiff's Eighth Amendment rights; (3) reject the "lack of personal involvement" argument as to defendants Rapelje and Best, but limit the scope of the claim against Rapelje; and (4) reject defendants' arguments concerning the merits of plaintiff's Eighth Amendment claim and the qualified immunity defense.

*Plaintiff's Objections:  Personal Involvement*

Plaintiff objects primarily to the magistrate judge's recommendation that eight of the ten defendants should be let out of the case on the grounds they were not "personally involved in any of the alleged constitutional violations . . . ." R&R at 8. Plaintiff argues that each of these eight defendants failed to take action to provide him with a smoke-free housing assignment and was therefore personally involved in violating his Eighth Amendment rights.

In their summary judgment motions, defendants Caruso, Straub and Rapelje argue they are entitled to summary judgment because "[t]he mere fact that they had supervisory authority over the other Defendants is insufficient to state a claim for relief under § 1983, . . ." Defs.' Mot.

---

[2] The magistrate judge suggests that the court dismiss the complaint *sua sponte* as to Trombley because, although she has not been served with process and is therefore not included in defendants' summary judgment motions, plaintiff has not shown she was personally involved in violating his Eighth Amendment rights. The court agrees. Additionally, the court notes that dismissal of the complaint as to her is appropriate pursuant to Fed. R. Civ. P. 4(m).

for Summ. J. at 11. Defendant Birkett makes the same argument in his motion. *See* Birkett's Mot. for Summ. J. at 4-5. Defendants Armstrong, Zummer and Rapelje likewise argue they were not personally involved and that "they are being sued for being the responders to Plaintiff's grievance that forms the basis of the complaint" and that this is insufficient to establish their personal involvement. Defs.' Mot. for Summ. J. at 11-12. Finally, defendant Winn argues he was not personally involved because he "was not assigned to SRF until February 10, 2008, almost two weeks *after* Plaintiff filed the grievance that forms the basis of this complaint. In fact, Plaintiff's grievance never mentions Defendant Winn at all." *Id.* at 12 (emphasis in original; footnote omitted).

The fundamental problem with defendants' argument is that it relies mistakenly on the proposition that "[l]iability under § 1983 must be based on active unconstitutional behavior and cannot be based on 'a mere failure to act.'" Defs.' Mot. for Summ. J. at 11, *quoting Shehee v. Lutrell*, 199 F.3d 295, 300 (6th Cir. 1999). In *Shehee*, plaintiff was fired from his prison commissary job when he filed a grievance accusing his supervisors of demanding kickbacks. He then sued the supervisors as well as everyone up the chain of command who had denied his "request for administrative remedy" and had failed to take remedial action. The court of appeals found that qualified immunity protected the defendants who simply denied his administrative grievances and "fail[ed] to remedy the alleged retaliatory behavior" but were not involved in the retaliatory discharge itself. *Id.* at 300. Such a rule appropriately applies when a discrete violation of rights has occurred and the supervisory officials' only involvement is that they learned about it afterwards.[3]

---

[3] This was precisely the situation in each of the cases cited by defendants in the section of their summary judgment brief entitled "No Personal Involvement": *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (supervisory officials not liable for harassment of plaintiff by prison guards); *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004) (sheriff not liable for allegedly wrongful arrest of plaintiff by sheriff's deputies); *Hays v. Jefferson County, Ky.*, 668 F.2d 869,

4

However, the rule that "liability cannot be based on a mere failure to act" does not apply to cases challenging ongoing conditions of confinement. As the Sixth Circuit has noted,

> [t]he Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; [these] officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)). An Eighth Amendment conditions-of-confinement claim has two elements. "First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act *or omission* must result in the denial of the minimal civilized measure of life's necessities." *Id.* at 834, 114 S.Ct. 1970 (internal quotation marks and citations omitted). Second, the prison official's "state of mind [must be] one of 'deliberate indifference' to inmate health or safety." *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 302-03, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)).

*Spencer v. Bouchard*, 449 F.3d 721, 727-28 (6th Cir. 2006) (emphasis added). Further, "[t]he deliberate-indifference requirement is satisfied 'only if [the official] knows that inmates face a substantial risk of serious harm *and disregards that risk by failing to take reasonable measures to abate it.*'" *Id.* at 729, *quoting Farmer*, 511 U.S. at 847 (emphasis added). To be sure, a prison official cannot be held liable *merely* because someone he supervises has committed a constitutional

---

872-74 (6th Cir. 1982) (chief of police and deputy chief of police not liable for alleged use of excessive force by officers against plaintiffs); *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988) (supervisors not liable for sexual harassment of plaintiff by co-worker); *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998) (university president and chancellor not liable for allegedly discriminatory treatment of plaintiff by faculty members); *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989) (prison warden and MDOC director, who responded to plaintiff's grievance appeal, not liable for alleged interference with plaintiff's mail by guards because "[t]he mere fact that a supervisory person is in a position of authority, or that he was aware of illegal conduct *after the fact*, does not allow the imposition of liability under section 1983") (emphasis added).

5

violation, as there is no *respondeat superior* liability under § 1983. However, any prison official, whether or not he occupies a position with supervisory authority, can be held liable if he is aware that an inmate's health or safety is seriously at risk and, despite such knowledge, "fail[s] to take reasonable measures to abate" the risk. As the court explained in *Spencer*,

> "when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs- e.g., food, clothing, shelter, medical care, and reasonable safety-it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause." *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 200, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) (emphases added); . . . The obligation to "provide" these basic needs would have no meaning if a prison official could fail to provide them and then evade liability simply by pleading that he "failed to act." That is why the Supreme Court has explicitly stated that a prisoner's Eighth Amendment claim may be based on "a prison official's act or omission." *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970 (emphasis added); *see also id.* at 836, 114 S.Ct. 1970 (discussing "acting or *failing to act* with deliberate indifference" (emphasis added)).

*Spencer*, 449 F.3d at 730-31 (footnote omitted). In other words, in a conditions-of-confinement case liability can be based on action (i.e., subjecting an inmate to unconstitutional conditions) as well as inaction (i.e., failing to remedy, or to remove the inmate from, such conditions). A number of cases have specifically recognized the medical need of asthmatic prison inmates to a smoke-free housing assignment and the potential liability of prison officials who, despite awareness of the need, fail to provide one. *See, e.g., Helling v. McKinney*, 509 U.S. 25 (1993); *Reilly v. Grayson*, 310 F.3d 519 (6th Cir. 2002), *aff'g Reilly v. Grayson*, 157 F. Supp.2d 762 (E.D. Mich. 2001); *Fisher v. Caruso*, 2006 WL 2711807 (E.D. Mich. Sept. 21, 2006).

As noted above, in the present case the magistrate judge concluded that "plaintiff has failed to allege or provide any evidence suggesting that defendants Caruso, Armstrong, Straub,

Trombley, Birkett, Winn, Kohloff and or Zummer were personally involved in any of the alleged constitutional violations . . . ." R&R at 8. In his objections, plaintiff argues persuasively that this conclusion is erroneous as to defendants Caruso, Armstrong and Zummer because these defendants, viewing the evidence in the light most favorable to plaintiff, were informed of the fact that plaintiff has a medical need for a smoke-free environment and that his housing assignment at SRF did not meet this need, and yet they failed to take any action.[4] Caruso was provided this information in a letter from plaintiff, dated June 4, 2008, entitled Declaratory Ruling Pursuant to Administrative Rule 791.1115, a copy of which is attached to the complaint. Zummer and Armstrong were provided the same information in plaintiff's grievance SRF-2008-02-0128-03C, a copy of which is also attached to the complaint, as they responded to the grievance at Steps I and III, respectively. Both the June 4 letter and the grievance provided detailed information about the nature of plaintiff's medical condition, his documented need for a smoke-free housing assignment, the presence of secondhand smoke in plaintiff's cell and housing unit, the refusal of the resident unit supervisor (Best) to change his assignment, and his worsening medical condition which required, among other things, a trip in January 2008 to an outside hospital by ambulance when he experienced a severe asthma attack triggered by secondhand smoke.

However, plaintiff has not shown that defendants Winn, Straub, Trombley, Birkett, or Kohloff were aware of any of these specific circumstances. Lacking such awareness, these defendants cannot be faulted for failing to take action. As to Winn, SRF's deputy warden, the allegation is only that plaintiff and a fellow inmate, Anthony Dowell, told him on two occasions, in

---

[4] Of course, defendants must also have had the *ability* to take action if they are to be held liable for having failed to take action in the face of a known, serious risk to plaintiff's health. As the parties have not addressed this issue, the court has no occasion to do so at this time.

7

February and April 2008, that "the floor is full of smokers," to which Winn responded "that all the smokers will be moved." Pl.'s Aff. ¶ 10. As to Straub, Deputy Director of the MDOC, the only allegation is that he is responsible for enforcing MDOC policies. Plaintiff makes no allegations specifically regarding Trombley and Birkett, both of whom served as the SRF warden for short periods of time. And Kohloff, the SRF assistant deputy warden of housing, allegedly was aware of "the mixing of non-smoking and smoking inmates," but plaintiff does not allege she had any awareness of plaintiff's medical need for a smoke-free housing assignment or of his worsening medical condition.

The court concludes that defendants Winn, Straub, Trombley, Birkett and Kohloff are entitled to summary judgment on the grounds they were not personally involved in violating plaintiff's Eighth Amendment rights. However, defendants Caruso, Armstrong and Zummer are not entitled to summary judgment on these grounds.

Nor, as the magistrate judge correctly found, are defendants Rapelje or Best entitled to summary judgment on the grounds they were not personally involved. However, the court disagrees with the limitation the magistrate judge has placed on the scope of the claim being asserted against these defendants. Rapelje, the SRF warden, was aware of plaintiff's situation because he responded to plaintiff's grievance at Step II. Best, the resident unit supervisor, was aware because plaintiff spoke to her directly the day after he arrived at SRF. The claim against all defendants is that they violated plaintiff's Eighth Amendment rights by failing to provide him with a smoke-free housing assignment as required by the "special accommodation notice" issued by a prison physician. One aspect of this claim is that Rapelje exacerbated plaintiff's asthma by issuing an order, dated December 27, 2007, and effective January 1, 2008, requiring all windows and outer doors to be

8

closed from November 1 through March 15.  The court does not view this as a discrete claim, but as evidence relating to Rapelje's alleged indifference to plaintiff's medical need for smoke-free air.  The court therefore rejects the R&R to the extent it would limit the claim against Rapelje to the December 27 order.

*Defendants' Objections: The Subjective Component of the Estelle Claim*

Defendants object only to the magistrate judge's conclusion that "a genuine issue of material fact exists with respect to whether defendants were deliberately indifferent to plaintiff's serious medical needs."  R&R at 21.  In essence, defendants argue that plaintiff cannot show they were deliberately indifferent to his medical need for a smoke-free housing assignment "because there was not only a non-smoking policy in place, but it was actually enforced by issuing misconduct tickets to violators of the policy."  Defs.' Obj. to R&R at 2-3.  Defendants contend that plaintiff has shown nothing more than perhaps "imperfect enforcement" of the no-smoking policy.

The court rejects this objection.  As noted above, the test is whether defendants knew that plaintiff "face[d] a substantial risk of serious harm ***and disregard[ed] that risk by failing to take reasonable measures to abate it.***"  *Spencer*, 449 F.3d at 729, *quoting Farmer*, 511 U.S. at 847 (emphasis added).  Viewing the evidence in the light most favorable to plaintiff, a jury could find that this test is satisfied.  Defendants concede – by not objecting to this portion of the R&R – that plaintiff had a serious medical need to be housed in a smoke-free environment.  Thus, the issue is whether defendants took reasonable measures to meet this need.  While defendants point to the no-smoking policy, plaintiff has produced evidence from which a jury could find that their enforcement of the policy was woefully inadequate, if not practically non-existent.  According to plaintiff's

9

affidavit, he was placed in a cell with a smoker, Donald Rhodus.[5]  Pl.'s Aff. ¶ 4.  Plaintiff promptly complained to Best, who acknowledged that the cell was designated as non-smoking and indicated that Rhodus "would be moved to a smoking cell."  *Id.*  However, Rhodus was not moved until September 2008, more than ten months after plaintiff was assigned to the cell with him.  Rhodus "smoke[d] in the room and smokes approximately a pack of cigarettes a day."  Rhodus Aff. ¶ 5.  Rhodus also avers that "unit officers allowed prisoners throughout the unit to smoke in the rooms and mostly wrote misconducts when prisoners smoked outside the rooms, but most of the time the officers ignored the smoking outside the rooms also until recently, whereby affiant after moving to cell/room 174 was issued a misconduct report for smoking in the room . . . ." *Id.* ¶ 6.  Plaintiff avers that "prisoners smoke in the cells, lavatory area, the day room area which entails the entire unit."  Compl. ¶¶ 24-25.[6]  Plaintiff also avers, and defendants do not deny, that his asthma was aggravated by his exposure to secondhand smoke and that he had two severe asthma attacks, one of which required that he be transported to an outside hospital by ambulance for emergency medical treatment.  *See* Pl.'s Aff. ¶¶ 6-8; Compl. ¶¶ 27-29.  At every level, plaintiff's complaints about his smoky housing assignment were dismissed with the explanation that plaintiff's cell was designated as non-smoking, violators were ticketed, and plaintiff's medical need was therefore being met.  *See* Compl. ¶ 21 (Best's response to oral complaint); Compl. at 41 (Zummer's response to Step I of

---

[5] Plaintiff's affidavit does not indicate how long plaintiff remained assigned to this cell, but in his objections to the magistrate judge's R&R he states he "shared this cell with Rhodus for nearly one-year."  Pl.'s Obj. to R&R at 3.  Rhodus avers that he and plaintiff were cell mates from October 25, 2007, to September 5, 2008.  *See* Rhodus Aff. ¶ 1.  Defendants do not appear to dispute this.

[6] In his affidavit, plaintiff incorporated the factual allegations made in ¶¶ 17 through 34 of his complaint.  *See* Mattox Aff. ¶ 13.

grievance); Compl. at 43 (Rapelje's response to Step II of grievance); Compl. at 45 (Armstrong's response to Step III of grievance).

Defendants correctly note the Supreme Court has stated that "the adoption of [a] smoking policy . . . will bear heavily on the inquiry into deliberate indifference." *Helling*, 509 U.S. at 36. Defendants also correctly note the Sixth Circuit has indicated that "imperfect enforcement" of the no-smoking policy is not actionable. *See, e.g., Taylor v. Boot*, 58 Fed.Appx. 125, 127 (6th Cir. 2003). However, as the magistrate judge correctly notes at pages 19-22 of the R&R, the mere existence of a non-smoking policy will not absolve defendants of liability if the policy is ignored. *See Talal v. White*, 403 F.3d 423, 427-28 (6th Cir. 2005); *Fisher*, 2006 WL 2711807 at **11-13. Viewing the facts in the light most favorable to plaintiff, there was not simply "imperfect enforcement" of the no-smoking policy in this case, but essentially no enforcement. Significantly, Rhodus avers that although he was a pack-a-day smoker, he was not ticketed for smoking in his "no-smoking" cell during the entire time plaintiff, whose asthma was medically documented, was housed with him. Defendants have submitted a number of "minor misconduct tickets" (attached to defendant Best's affidavit) in an effort to show the no-smoking policy is enforced, but most of these relate to instances of smoking in housing units other than plaintiff's and the earliest is dated May 30, 2008, seven months after plaintiff was assigned to his cell with Rhodus.[7] These misconduct tickets are therefore of only marginal relevance, and they certainly do not suffice to establish

---

[7] Plaintiff was assigned to "housing unit 800, cell #40, located on A-Wing." Compl. ¶ 18. Of the 30 misconduct tickets attached to Best's affidavit, 11 concerned violations in housing unit 700, 13 concerned violations in housing unit 800, and six concerning violations in housing unit 900. Of the 13 misconduct tickets from housing unit 800, spanning the two-month time period from May 30 to July 31, 2008, only two concerned smoking in cells (57/58 and 105/106). All of the others concerned smoking in the game room, the bathroom, the "shake down room" and the "quiet room."

defendants' entitlement to summary judgment.

As there is no evidence of any enforcement of the no-smoking policy for the first seven months of plaintiff's confinement with Rhodus, there is no basis for finding that defendants took any steps whatsoever to abate the risk to plaintiff's health during that time. Whether the meager enforcement efforts exhibited by the submitted misconduct tickets for June and July 2008 suffice to defeat plaintiff's evidence of deliberate indifference will be for the jury to say. The court cannot resolve this factual dispute on summary judgment.

*Conclusion*

For the reasons stated above,

IT IS ORDERED that Magistrate Judge Morgan's R&R dated March 12, 2009, is accepted in part and rejected in part, as explained above.

IT IS FURTHER ORDERED that plaintiff's objections to the R&R are sustained in part and overruled in part, as explained above.

IT IS FURTHER ORDERED that defendants' objections to the R&R are overruled.

IT IS FURTHER ORDERED that defendants' motion for summary judgment is granted as to defendants Winn, Straub, Birkett and Kohloff, but denied as to defendants Caruso, Armstrong, Zummer, Rapelje and Best.

IT IS FURTHER ORDERED that the complaint is dismissed *sua sponte* as to defendant Trombley.

                                                    S/Bernard A. Friedman
                                                    BERNARD A. FRIEDMAN
                                                    SENIOR UNITED STATES DISTRICT JUDGE

Dated:  April 27, 2009
       Detroit, Michigan

I hereby certify that a copy of the foregoing document
was served upon counsel of record by electronic and/or first-class mail.

S/Carol Mullins
Case Manager to Chief Judge Friedman